IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

RICHARD F. MCVAY,

               Appellant,

       v.

LEE CROSSRIDGE LLC,
JOHN DOES 1-10, and
ABC CORPORATIONS 1-10,

               Respondent.

No. 81757-4-I

DIVISION ONE

UNPUBLISHED OPINION

COBURN, J. — Richard F. McVay appeals the trial court's order vacating default judgment against Lee Crossridge LLC (Crossridge) for insufficient service of process. McVay contends he properly served the Washington Secretary of State as an agent for Crossridge. We disagree and affirm.

FACTS

McVay alleges that he parked his car in the Crossridge Corporate Center (Center) parking lot owned by Crossridge and sustained injuries when he exited his car and slipped on wet and mossy pavement.

On October 17, 2017, McVay sent a letter to Crossridge's registered agent, Shih-Jong "James" Lee, at the address listed as Crossridge's principal office by the Washington Secretary of State. Lee received the letter at the principal office, which is also his home. The letter informed Lee that McVay fell and sustained injuries in the Center's parking lot. It also stated,

Citations and pin cites are based on the Westlaw online version of the cited material.

we respectfully notify your insurer of this claim as well as forward this correspondence. <u>PLEASE NOTE THAT IF WE DO NOT HEAR FROM EITHER CROSSRIDEGE [sic], LLC OUR [sic] THEIR INSURER WITHIN THIRTY DAYS FROM THE DATE OF THIS CORRESPONDENCE, WE WILL HAVE NO CHOICE BUT TO FILE SUIT ON OUR CLIENT'S BEHALF</u>.

Lee did not respond to the letter or follow up with Crossridge's insurer. On December 17, 2019, McVay filed a complaint in King County Superior Court alleging Crossridge negligently and recklessly permitted an unreasonably dangerous condition to exist and failed to exercise reasonable care to make the Center's parking lot safe. McVay claimed Crossridge's negligence and recklessness were a direct and proximate cause of his injuries.

McVay hired ABC Legal Services, Inc. (ABC) to serve Crossridge. ABC attempted to serve Lee personally eight times between December 23, 2017 and January 14, 2018 at the principal office. When those attempts were unsuccessful, ABC tried to serve Lee seven times between January 19 and February 7 at the principal office of DRVision Technologies, LLC, which was another business for which Lee was the registered agent. Of the 15 attempts at service, Lee was out of town for seven of them and stayed at a hotel in town for one of them. Lee claimed that none of his DRVision employees ever notified him of an attempted service of a lawsuit. McVay never attempted service by registered or certified mail.

Four months after ABC's last attempt of service, McVay elected to serve the secretary of state as an agent for Crossridge. The submission of service included a form coversheet provided by the secretary of state certifying that

2

McVay's counsel "attempted service on the entity by registered or certified mail, return receipt requested, or similar commercial delivery service at the principal office address as shown on the entity's most recent annual report filed with the Secretary of State's Office." On July 5, 2018, the secretary of state accepted service on behalf of Crossridge.

On December 13, 2018, McVay filed a motion for default judgment. The same day, the trial court entered an order of default and judgment against Crossridge. The court found that McVay properly served Crossridge and Crossridge failed to appear. It also found Crossridge liable for McVay's injuries.

More than one year later, McVay mailed Lee a copy of a motion for an order to show cause regarding appointment of a receiver and for injunctive relief. Lee received the motion on March 9, 2020 and moved to vacate the default judgment for improper service. Lee said this was the first time he received notification of the lawsuit.

At the hearing on the motion to vacate the default judgment, McVay relied on declarations from the ABC process server and documentation proving McVay served the secretary of state's office. At the hearing, McVay's counsel stated he mailed the October 2017 letter to Lee by registered mail but conceded that he did not serve the summons and complaint by registered mail.

The trial court granted Lee's motion to vacate the default judgment. The trial court denied McVay's motion for reconsideration.

McVay appeals.

3

DISCUSSION

McVay contends the trial court erred in vacating the default judgment because he properly perfected service under former RCW 23.95.450 (2016),[1] a statute permitting the secretary of state to receive service of process as agent of an entity under certain circumstances. We disagree.

Under CR 60(b)(5), a court must vacate a void judgment. Ahten v. Barnes, 158 Wn. App. 343, 350, 242 P.3d 35 (2010). A party may assert a motion to vacate under CR 60(b)(5) any time after entry of judgment. Id.

Generally, Washington courts disfavor default judgments. See Gage v. Bowing Co., 55 Wn. App. 157, 160, 776 P.2d 991 (1989). A default judgment is void if the trial court lacked personal jurisdiction over the party. Ahten, 158 Wn. App. at 349. To invoke personal jurisdiction, there must be "[p]roper service of the summons and complaint." Ha v. Signal Elec., Inc., 182 Wn. App. 436, 447, 332 P.3d 991 (2014) (citing Allstate Ins. Co. v. Khani, 75 Wn. App. 317, 324, 877 P.2d 724 (1994)).

"Constitutional due process concerns determine the minimum requirements for service, but statutory service requirements may add to the constitutional requirements." Crystal, China & Gold, Ltd. v. Factoria Ctr. Invs., Inc., 93 Wn. App. 606, 609, 969 P.2d 1093 (1999) (citing Weiss v. Glemp, 127 Wn.2d 726, 734, 903 P.2d 455 (1995)).

---

[1] The current statute is nearly identical to the former statute except for a minor change that is not relevant to this appeal.

"Under Washington law, the plaintiff has the initial burden to show that service was sufficient. The plaintiff can 'establish service of process with an affidavit of service from a process server.' Then it is the defendant's burden to show by clear and convincing evidence that service was improper." Delex Inc. v. Sukhoi Civil Aircraft Co., 193 Wn. App. 464, 468-69, 372 P.3d 797 (2016) (quoting Scanlan v. Townsend, 181 Wn.2d 838, 847, 336 P.3d 1155 (2014)).

" 'Because courts have a mandatory, nondiscretionary duty to vacate void judgments, a trial court's decision to grant or deny a CR 60(b) motion to vacate a default judgment for want of jurisdiction is reviewed de novo.' " Ahten, 158 Wn. App. at 350 (quoting Dobbins v. Mendoza, 88 Wn. App. 862, 871, 947 P.2d 1229 (1997)). Whether service of process was proper is a question of law that we also review de novo. Goettemoeller v. Twist, 161 Wn. App. 103, 107, 253 P.3d 405 (2011) (citing Pascua v. Heil, 126 Wn. App. 520, 527, 108 P.3d 1253 (2005)).

When a party sues an entity, it may serve notice on the entity's registered agent. Former RCW 23.95.450. The relevant statute went into effect January 1, 2016 and replaced former RCW 23B.05.040 (1989). Former RCW 23.95.450 provides:

> (1) A represented entity may be served with any process, notice, or demand required or permitted by law by serving its registered agent.
> (2) If a represented entity ceases to have a registered agent, or if its registered agent cannot with reasonable diligence be served, the entity may be served by registered or certified mail, return receipt requested, or by similar commercial delivery service, addressed to the entity at the entity's principal office. The address of the principal office must be as shown in the entity's most recent annual report filed by the secretary of state. Service is effected under this subsection on the earliest of:

(a) The date the entity receives the mail or delivery by the commercial delivery service;

(b) The date shown on the return receipt, if executed by the entity; or

(c) Five days after its deposit with the United States postal service or commercial delivery service, if correctly addressed and with sufficient postage or payment.

(3) If process, notice, or demand cannot be served on an entity pursuant to subsection (1) or (2) of this section, service may be made by handing a copy to the individual in charge of any regular place of business or activity of the entity if the individual served is not a plaintiff in the action.

(4) The secretary of state shall be an agent of the entity for service of process if process, notice, or demand cannot be served on an entity pursuant to subsection (1), (2), or (3) of this section.

(5) Service of process, notice, or demand on a registered agent must be in a written record, but service may be made on a commercial registered agent in other forms, and subject to such requirements, as the agent has stated in its listing under RCW 23.95.420 that it will accept.

(6) Service of process, notice, or demand may be made by other means under law other than this chapter.

"If, after reasonable diligence, the corporation's registered agent cannot be found at the registered office, then service on the corporation may be effectuated by serving the Secretary of State." Crystal, China & Gold, Ltd., 93 Wn. App. at 609 (citing former RCW 23B.05.040(2)(b) (1989)). Under former RCW 23B.05.040(3), the secretary of state would then "immediately cause a copy thereof to be forwarded by certified mail, addressed to the secretary of the corporation at the corporation's principal office as shown on the records of the secretary of state."

The relevant statute no longer requires the secretary of state to mail a copy to the entity and instead allows the secretary of state to act as the agent of the entity "for service of process if process, notice, or demand cannot be served

on an entity pursuant to subsection (1), (2), or (3) of this section." RCW 23.95.450(4).

Statutory interpretation is a question of law that we review de novo. State v. Mullen Trucking 2005, Ltd., 5 Wn. App. 2d 787, 794, 428 P.3d 401 (2018). "Our primary duty in interpreting a statute is to discern the intent of the legislature. We begin with the statute's plain language, which may be discerned 'from all that the Legislature has said in the statute and related statutes which disclose legislative intent about the provision in question.' " Id. (citations omitted). "Where the plain language of a statute is unambiguous, and legislative intent is therefore apparent, we will not construe the statute otherwise." Ellensburg Cement Prods., Inc. v. Kittitas County., 179 Wn.2d 737, 743, 317 P.3d 1037 (2014). We construe the language in a statute as a whole "giving effect to all the language used." C.J.C. v. Corp. of the Catholic Bishop of Yakima, 138 Wn.2d 699, 708, 985 P.2d 262 (1999).

McVay contends the alternative methods of service under former RCW 23.95.450 are optional, so he was not required to satisfy subsections (2) and (3) before serving the secretary of state if personal service failed under subsection (1). Specifically, McVay contends former RCW 23.95.450(2) "permits *but does not require*" service by registered or certified mail because it uses the term "may." Crossridge contends former RCW 23.95.450 outlines progressive steps that a party must attempt before it may serve the secretary of state as agent of the entity. We agree with Crossridge.

Subsections (5) and (6) of former RCW 23.95.450 recognize that there may be alternative methods to effectuate service of process other than those listed in the statute. However, those other methods must be "subject to such requirements, as the agent has stated in its listing under RCW 23.95.420 that it will accept" or as allowed for "under the law other than this chapter." Former RCW 23.95.450(4)-(5). The statute uses the term "may" in subsections (1) through (3) because it recognizes there may be other lawful methods of service.

Reading the statute as a whole, the plain language of former RCW 23.95.450 represents three distinct progressive steps before a party may serve the secretary of state. First, the party must attempt service on the entity's registered agent. Former RCW 23.95.450(1). Second, it is only "*[i]f* a represented entity ceases to have a registered agent, or *if* its registered agent cannot with reasonable diligence be served, the entity may be served by registered or certified mail, return receipt requested, or by similar commercial delivery service." Former RCW 23.95.450(2) (emphasis added). The party may utilize the third option of service, "to the individual in charge of any regular place of business or activity of the entity," only "*if*" process "cannot be served on an entity pursuant to subsection (1) or (2)." Former RCW 23.95.450(3) (emphasis added). Lastly, the secretary of state "shall be an agent of the entity for service of process *if* process, notice, or demand cannot be served on an entity pursuant to subsection (1), (2), or (3) of this section." Former RCW 23.95.450(4) (emphasis added).

8

By creating these progressive steps, the legislature shifted the burden of notice by mail from the secretary of state to the party who must comply with service of process. The secretary of state's "COVER SHEET FOR SERVICE OF PROCESS TO THE SECRETARY OF STATE'S OFFICE" form signed by McVay's counsel required him to "certify under penalty of perjury under the laws of the state of Washington" the following:

- I attempted service on the Registered Agent, as listed in the entity's information in the Secretary's records.

- The entity does not have a registered agent and I attempted service on the entity by registered or certified mail, return receipt requested, or similar commercial delivery service at the principal office address as shown on the entity's most recent annual report filed with the Secretary of State's Office.

- I have exercised reasonable diligence in attempting to serve the registered agent, and I attempted service on the entity by registered or certified mail, return receipt requested, or similar commercial delivery service at the principal office address as shown on the entity's most recent annual report filed with the Secretary of State's Office.

- I could not serve the entity using any of the above methods therefore I attempted service by handing a copy to the individual in charge of any regular place of business or activity of the entity and the individual served is not a plaintiff in the action.

McVay exercised reasonable diligence in attempting to serve Lee as Crossridge's registered agent. Eight attempts of service at Crossridge's principal office and seven attempts of service at another company where Lee works is more than reasonable. After these reasonable attempts failed, instead of continually trying to personally serve Lee, McVay could have attempted service by registered or certified mail. However, he did not, despite certifying to the

9

secretary of state that he did so. Because McVay did not serve Crossridge "by registered or certified mail, return receipt requested, or similar commercial delivery service at the principal office address as shown on the entity's most recent annual report filed with the Secretary of State's Office," serving the secretary of state was not yet an option.[2]

Without any support in the record, McVay also contends that Crossridge failed to continuously maintain a registered agent in Washington in violation of the Washington Business Corporations Act. RCW 23.95.405 requires all domestic and registered foreign entities to maintain a registered agent in Washington. McVay cites to no authority that a registered agent cannot travel out of town.

McVay also contends Lee frustrated his attempt to serve Crossridge in compliance with former RCW 23.95.450(3) by locking or closing his primary office during business hours at DRVision. First, DRVision is not Crossridge so locking or closing the primary office of DRVision is not relevant because former RCW 23.95.450(3) allows service to be "made by handing a copy to the

---

[2] Without explaining how ABC's personal service attempt that did not leave any message at Crossiridge's principal office is "similar" to service by registered or certified mail, McVay also contends he complied with former RCW 23.95.450(2) because ABC is a "commercial delivery service." McVay first raised this argument in his motion for reconsideration. McVay does not assign error to the trial court's order denying reconsideration. RAP 10.3(a)(4); RAP 10.3(g); see also Herzog Aluminum, Inc. v. Gen. Am. Window Corp., 39 Wn. App. 188, 197, 692 P.2d 867 (1984) (issue not properly before appellate court where respondent does not assign error to the trial court decision). Because McVay does not assign error to or provide reasoning as to why we should reverse the order denying reconsideration, we decline to address this argument. RAP 10.3(a)(6).

individual in charge of any regular place of business or activity of the entity if the individual served is not a plaintiff in the action." Regardless, this method of service would only have been available if McVay could not serve Lee personally, or by certified or registered mail, or by a similar commercial delivery service.

CONCLUSION

McVay did not comply with former RCW 23.95.450 and did not otherwise establish that he lawfully served the summons and complaint on Crossridge. Thus, the trial court did not have personal jurisdiction over Crossridge and properly vacated the default judgment. Accordingly, we affirm.

_Coburn, J._

WE CONCUR:

_Chun, J._                    _Verellen, J._